UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PAUL M. JOHNSON | CIVIL ACTION |
| VERSUS | NO. 12-706-RLB |
| ATTORNEY OFFICE OF NEWMAN, MATHIS, BRADY & SPEDALE | CONSENT CASE |

## RULING AND ORDER

This matter is before the court on the parties' cross motions for summary judgment. On May 15, 2013, Defendant filed its motion for summary judgment (R. Doc. 15). Although Plaintiff did not file an opposition memorandum, Plaintiff raised arguments in opposition to Defendant's motion in his motion for default judgment filed on June 17, 2013 (R. Doc. 17).[1] Because Plaintiff is unrepresented by counsel, the court will consider those arguments in ruling on Defendant's motion. On June 26, 2013, Plaintiff filed a document titled "Memorandum in Support of Motion for Summary Judgment (In Accordance with FRCP Rule 56)," which the court construes to be Plaintiff's motion for summary judgment (R. Doc. 20). Defendant has filed an opposition to Plaintiff's motion (R. Doc. 21). The parties have consented to proceed before the magistrate judge pursuant to 28 U.S.C. § 636(c).

Having considered the motions and briefs submitted by the parties, the summary judgment record, and the applicable law, the Court hereby **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

---

[1] On December 23, 2013, the court denied Plaintiff's motion for default judgment (R. Doc. 22). Attached to Plaintiff's motion was an "Affidavit/Declaration of Rebuttal" that, in part, addresses factual issues raised in Defendant's motion for summary judgment.

I. Background

This lawsuit arises out of a previous debt collection suit brought against Paul M. Johnson ("Plaintiff" or "Mr. Johnson") in Baton Rouge City Court. Plaintiff entered into a Promissory Note with Family Financial Services, Inc. in the amount of $3,399.50. (R. Doc. 17-2 at 21-22).[2] On April 7, 2009, the law firm Newman, Mathis, Brady & Spedale ("Defendant") filed a petition commencing the state court litigation on behalf of Family Financial Services. (R. Doc. 15-7 at 2). According to Defendant, Plaintiff was served with the petition in the state court litigation on April 23, 2009. (R. Doc. 15-7 at 3). Plaintiff disputes having been served the state court petition. (R. Doc. 17-1 at 4).

On April 8, 2009, the day after Defendant filed the debt collection suit, Defendant sent a debt collection letter to Plaintiff, informing him that he owed $3,761.85 to Family Financial Services. (R. Doc. 15-3 at 1). The letter also informed Plaintiff that federal law provided him thirty days after receipt of the letter to dispute the validity of the debt or any part of it or the debt would be assumed valid. (R. Doc. 1-3 at 1).[3]

On May 14, 2009, Defendant obtained a default judgment for Family Financial Services in the underlying state court action. (R. Doc. 1 at 3). According to Defendant, Plaintiff was served with notice of the default judgment against him on May 22, 2009. (R. Doc. 15-7 at 3). Plaintiff disputes having been served with notice of the default judgment. (R. Doc. 17-1 at 4).

On May 27, 2009, Plaintiff mailed a letter to Family Financial Services acknowledging that he was in receipt of a letter demanding payment of the loan:

---

[2] Plaintiff alleges that the promissory note attached to Defendant's initial disclosures is a forgery, but he does not appear to allege that the underlying debt never existed. (R. Doc. 20 at 8).
[3] Plaintiff disputes having received this letter. (R. Doc. 17-1 at 3). The following month, however, he sent correspondence to Family Financial Services acknowledging receipt of a letter demanding payment of a loan. (R. Doc. 15-5).

2

> I am in receipt of your letter of demand in the above referenced account [#12549-46596]. Please find Enclosed within this package my acceptance for value in full for the same account. Upon your receipt of this letter, please adjust my account pursuant to Public Policy (HJR 192-June 5, 1933) and codified at 31 USC 5118.[4] If for some reason you are unable to adjust my account, I respectfully suggest that you employ the service of competent counsel that is well versed in commercial and banking law. It is not my responsibility to educate you, the Court, or anyone as to your fiduciary and ministerial duties or to adjust My account so that the "charges" will be discharged.

(R. Doc. 15-5).

In March of 2011, Family Financial Services sold the default judgment against Plaintiff, and the underlying obligation, to Excel Finance Company. (R. Doc. 15-7 at 4). Defendant continued to represent Excel Finance Company in connection with the debt and default judgment. (R. Doc. 15-7 at 4). On May 14, 2012, Defendant filed a Petition for Garnishment in Baton Rouge City Court and served it on Plaintiff. (R. Doc. 15-7 at 5). Plaintiff disputes having been served the Petition for Garnishment. (R. Doc. 17-1 at 6).

Plaintiff claims that on May 30, 2012, June 7, 2012, and September 24, 2012 he sent letters to Defendant requesting Defendant to "verify the debt and prove proper standing, jurisdiction and to produce the contract between the defendant and plaintiff or face the consequences for failing to cease and desist of their abusive debt collector practice. . . ." (R. Doc. 8 at 1).

On November 13, 2012, Plaintiff filed a complaint in federal court alleging that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") while proceeding to collect upon Plaintiff's debt. (R. Doc. 1).[5] In his Complaint, Plaintiff alleges

---

[4] This statute invalidated gold clauses in contracts, which require payment of a debt to be tied to a fixed value as opposed to the actual number of dollars promised. An amendment to the statute lifted the gold clause prohibition to obligations issued after October 27, 1977. *See* 31 U.S.C. § 5118(d)(2).

[5] Plaintiff represents himself pro se and the court has held his filings "to less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (finding allegations in a pro se complaint are to be held "to less stringent standards than

3

that Defendant has violated 15 U.S.C. § 1692g for not responding to the letters he sent on May 30, 2012, June 7, 2012, and September 24, 2012:

> Defendant has been notice three times by certified mail to produce documents under 15 Chp Subchapt 4 sec 1692g, defendant hasn't respond and in regard to that aledge Attorney Charles E. Spedel proceeded with judicial process without proper standing, the EBRP Courts were alerted to the facts and did not adhear to my complaint See Attachments.

(R. Doc. 1 at 2). Plaintiff also appears to allege that the default judgment obtained against him in Baton Rouge City Court was obtained in error because Charles Spedale, an attorney at the Defendant law firm, did not have "proper standing" to bring the debt collection action in Baton Rouge City Court.[6]

Plaintiff attached various documents to his Complaint.[7] Some of these documents appear to have been sent to Defendant—and possibly the Baton Rouge City Court—as part of Plaintiff's dispute regarding the underlying debt collection proceedings. Two of these documents (which both bear the Baton Rouge City Court suit number 09-03136-A) contain allegations that Defendant violated various sources of federal law, including the U.S. Constitution and various non-FDCPA civil statutes, criminal statutes, and regulations. (*See* R. Doc. 1 at 8-12).

---

formal pleadings drafted by lawyers"); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a pro se plaintiff's] allegations and briefs more permissively"). That said, Plaintiff's complaint and other filings are especially difficult to decipher, as Plaintiff has threaded references to random and unrelated legal terms throughout those documents.

[6] Although Plaintiff appears to challenge the validity of the default judgment for lack of service, Plaintiff has not requested the court to vacate the state court judgment.

[7] The documents attached to the complaint are (1) the May 14, 2009 default judgment; (2) the May 14, 2012 petition for garnishment and related documents; (3) a document by Plaintiff notarized on May 29, 2012 bearing the Baton Rouge City Court suit number and raising various allegations against, and demands from, Defendant; (4) a document by Plaintiff allegedly notarized but undated bearing the Baton Rouge City Court suit number; (5) a letter dated August 1, 2012 from Family Financial Services informing Plaintiff that Excel Finance Company purchased his loan in May 2011; (6) a form dated October 1, 2012 and signed by a law clerk at Baton Rouge City Court informing Plaintiff that the court was returning a letter submitted by Plaintiff; (7) a pay stub for Plaintiff related to a check dated November 2, 2012; and (8) various copies of a Form 1099 related to the default judgment.

## II. Arguments of the Parties

### a. Defendant's motion for summary judgment

Defendant's motion for summary judgment relies upon the pleadings, a Statement of Undisputed Facts, and the affidavit of Charles E. Spedale. Defendant argues that "it appears that, when [Plaintiff] was notified of the garnishment, he undertook a paper war, seeking to distract everyone from the fact that he had not satisfied the judgment." (R. Doc. 15-1 at 5). Defendant argues that there is no genuine dispute as to any material fact regarding Plaintiff's ability to recover under the FDCPA or any of the other sources of law cited by Plaintiff.

Defendant further argues that the factual predicate in all of Plaintiff's FDCPA claims is Defendant's alleged failure to respond to Plaintiff's letters requesting verification of the debt (and other information), and all of Plaintiff's claims, therefore, should be analyzed through 15 U.S.C. § 1692g. More specifically, Defendant argues that, under § 1692g(b), a debtor must contact the debt collector within 30 days from the initial communication by the debt collector to request verification of the debt. (R. Doc. 15-1 at 6). As Plaintiff did not demand verification of the debt until approximately three years after Defendant sent notice of the debt, Defendant argues that it was "under no obligation to provide verification of the debt, or to suspend collection activity." (R. Doc 15-1 at 7). Defendant further argues that, under § 1692k(d), Plaintiff's FDCPA claims are time-barred because the alleged violation occurred in 2009 and the Plaintiff did not file his lawsuit within the one-year period provided by the statute. Defendant also addresses the various non-FDCPA claims raised by Plaintiff in the attachments to his complaint.

Plaintiff did not file an opposition to Defendant's motion for summary judgment. Instead, Plaintiff raised arguments in response to the motion in his "Affidavit/Declaration of Rebuttal"

(R. Doc. 77-1), which was attached to his Motion for Default Judgment (R. Doc. 77). That document challenges many of the factual statements found in the affidavit of Charles E. Spedale.

### b. Plaintiff's motion for summary judgment

Plaintiff did not submit a Statement of Undisputed Facts or any evidence in support of his motion for summary judgment.[8] Plaintiff's motion asserts several "counts" against Defendant: 27 counts of violation of the FDCPA, 6 counts of violation of the Federal Rules of Civil Procedure, 8 counts of violation of presidential executive orders or Congressional concurrent resolutions, 4 counts of violation of provisions of the United States Constitution, and 12 counts of violation of federal criminal statutes. Plaintiff references a "Disclosure" but no such document is attached to his motion.[9] Plaintiff alleges that "Defendant never communicated to Plaintiff through any form of medium of information regarding an alleged debt directly or indirectly as Defendant alleged to be sworn in affidavit." (R. Doc. 20 at 2).

## III. Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can

---

[8] Under Local Civil Rule 56.1, "[e]very motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."

[9] This reference maybe to Defendant's Initial Disclosures (R. Doc. 17-2), which is the subject of Plaintiff's motion for default judgment (R. Doc. 17).

satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little*, 37 F.3d at 1075. In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1994).

## IV. Law & Analysis

### a. Plaintiff's Claims Under the FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Debt collectors who fail to comply with the FDCPA are subject to civil liability. 15 U.S.C. § 1692k. In order to prevail in a civil action brought under the FDCPA, the plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector

7

as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995). A violation of the FDCPA subjects a debt collector to liability for actual damages, additional damages up to $1,000, and incurred costs and attorneys' fees. 15 U.S.C. § 1692k(a).

Neither party appears to dispute that the first two elements of an FDCPA claim are satisfied, namely that Plaintiff has been the object of collection activity arising from consumer debt and Defendant is a debt collector as defined by the FDCPA. The parties, however, dispute whether Defendant has engaged in an act or omission prohibited by the FDCPA. [10] The Court

---

[10] The Complaint's Prayer for Relief, as well as certain attachments to the Complaint, allege that Defendant has violated nearly every section of the FDCPA, from 15 U.S.C. §1692a to 15 U.S.C. §1692n. (R. Doc. 1 at 2, 8, 11). Plaintiff does not assert any factual allegations, however, that could be construed as raising a claim under the FDCPA separate and apart from his claim under 15 U.S.C. §1692g. The court will, however, briefly discuss the invalidity of the remaining sections of the FDCPA invoked by Plaintiff.
    Section 1692a is a definitional section does not provide a basis for violating the FDCPA.
    Section 1692b prohibits the improper acquisition of location information about the debtor by the debt collector. Plaintiff has made no factual allegations supporting a claim under this section of the FDCPA.
    Section 1692c limits the approved methods of communications by the debt collector regarding the debt. Plaintiff has not indicated that Defendant has communicated with him or third parties regarding the debt outside the context of legal proceedings. If anything, Plaintiff has alleged that Defendant has failed to communicate with him.
    Section 1692d prohibits a debt collector's use of harassing, oppressive, or abusive conduct in connection with the collection of a debt and Section 1692e concerns a debt collector's use of false, deceptive, or misleading representations in connection with the collection of a debt. Plaintiff does not allege that Defendant has engaged in any of the acts listed in these two sections. It appears that, at most, Plaintiff alleges that Defendant's filings in the Baton Rouge City Court constitute a violation of these sections. (R. Doc. 1 at 11). Plaintiff has not, however, alleged with any specificity how any legal filings made by Defendant (which Plaintiff claims to have never been served) involve harassing, oppressive, or abusive conduct or the use of false, deceptive, or misleading representations relevant under the FDCPA.
    Section 1692f prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect a debt. Plaintiff appears to allege that Defendant has violated this section by proceeding in Baton Rouge City Court without "subject matter jurisdiction, venue/jurisdiction, [and] without proper standing." (R. Doc. 1 at 11). Such jurisdictional and procedural defects were subject to challenge in the Baton Rouge City Court proceeding. Plaintiff does not allege that Defendant engaged in any of the examples of unfair or unconscionable practices articulated in Section 1692f.

8

agrees with Defendant that Plaintiff's allegation under the FDCPA is that "he made a request of defendant to verify a debt, and that the defendant failed to do so." (R. Doc. 15-1 at 1).

Construing the Complaint most generously for Plaintiff in light of the record, Plaintiff's primary factual allegations are (1) that he never received Defendant's April 8, 2009, notice of debt letter; (2) that he was never served the complaint, default judgment, or petition for garnishment filed in Baton Rouge City Court; (3) that he first became aware of the debt and default judgment after his wages began to be garnished in May of 2012; and (4) that he subsequently sent requests to verify the debt and obtain information regarding Defendant's authority to collect upon the debt. Based on these factual allegations, the court construes the Complaint to raise a claim that Defendant violated the validation provision of the FDCPA, 15 U.S.C. § 1692g.

Section 1692g requires a debt collector, either in its initial communication[11] with a debtor, or within five days after its initial communication with a debtor, to advise the debtor of certain information about the debt being collected upon:

---

Section 1692h concerns the payment of multiple debts. This section has no application to the facts of this case.

Section 1692i prohibits venue restrictions on where a debt collector may bring a legal action on a debt. The debt at issue does not involve real property and was properly brought in Baton Rouge City Court because it is the judicial district in which Plaintiff resided at the commencement of the action. *See* 15 U.S.C. § 1692i(a)(2)(B).

Section 1692j concerns the furnishing of deceptive forms that would create a false belief in the debtor that a non-creditor was participating in the collection of a debt. Again, Plaintiff alleges that Defendant's filings in Baton Rouge City Court constituted the filing or entering of "deceptive forms in to the courts." (R. Doc. 1 at 11).

Section 1692l concerns administrative enforcement of the FDCPA by the Federal Trade Commission. This section is inapplicable to the Plaintiff's private cause of action.

Section 1692m requires the Bureau of Consumer Financial Protection to submit certain reports to Congress. This section is inapplicable to the Plaintiff's private cause of action.

Section 1692n concerns the relationship of the FDCPA to state laws. Plaintiff has not alleged any violations of state laws. This section is, therefore, inapplicable to this case.

[11] The filing and service of the complaint or petition for garnishment in Baton Rouge City Court does not constitute an initial communication under § 1692g(a). *See* 15 U.S.C. § 1692g(d)

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). If the debtor disputes the debt, the debtor has thirty days to seek verification of the debt and the debt collector must cease collection of the debt until verification of the debt is made. 15 U.S.C. § 1692g(b).

As an initial matter, Plaintiff did not submit competent summary-judgment evidence to contradict Defendant's affidavit or to support his own motion for summary judgment. Neither the document submitted by Plaintiff to oppose Defendant's motion for summary judgment (R. Doc. 17-1) nor Plaintiff's motion for summary judgment (R. Doc. 20) is submitted by way of a sworn affidavit or an unsworn declaration in conformance with 28 U.S.C. § 1746. An unsworn affidavit is not competent summary judgment evidence.[12] Similarly, an unsworn declaration is

---

("A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication . . . ."). Thus, whether Plaintiff was served those pleadings has no bearing on whether Defendant violated § 1692g, which pertains only to initial communications.

[12] *See People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011) (district court did not abuse its discretion in denying motion to dismiss defendant where defendant only submitted "an un-notarized affidavit claiming that no service was made on him or his wife"); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) ("Unsworn documents are also not appropriate for consideration."); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (court may not consider unsworn statements "in determining the propriety of summary judgment); *see also Owens v. CEVA Logistics/TNT*, No. H-11-2237, 2012

not competent summary judgment evidence unless it contains statements that it was made "under penalty of perjury" and is verified as "true and correct."[13] As discussed below, even if Plaintiff had properly submitted his supporting documents in the form of competent summary judgment evidence, the court would still grant Defendant's motion, and deny Plaintiff's motion, on the basis that they do not raise any genuine disputes of material facts.

Although Plaintiff's primary argument focuses on his allegation that he never received Defendant's initial communication, it also appears that Plaintiff may be questioning the validity of the April 8, 2009 letter itself. Defendant's initial communication provided (1) the amount of the debt ($3,761.85); (2) the name of the creditor (Family Financial Services); (3) that federal law provides thirty days after receipt of the letter to dispute the validity of the debt or any part of it; (4) that Defendant would obtain verification of the debt and mail it to Mr. Johnson if notified within the thirty-day period that Mr. Johnson disputed the debt or any portion of it; and (5) that upon written request within the same period, Defendant would provide Mr. Johnson with the name and address of the original creditor, if different from the current creditor. (R. Doc. 15-3 at 1). Defendant also disclosed in its initial communication that it was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose as required by § 1692e(11). (R. Doc. 15-3 at 2).

The court applies a least sophisticated debtor standard to determine whether the § 1692g debt validation notices have been conveyed effectively to the debtor and whether a debt collector

---

WL 6691115 (S.D. Tex. Dec. 21, 2012) (un-notarized affidavit is not "competent summary-judgment evidence"); *White v. Lee*, No. 09-255, 2010 WL 2175839, at * 2 (N.D. Miss. May 27, 2010) ("Although *pro se* plaintiffs are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, the Fifth Circuit . . . has never allowed *pro se* plaintiffs to oppose summary judgments by the use of unsworn materials." ); *Ellison v. Broadus*, 2010 WL 988760, at *7 (S.D. Miss. Mar. 15, 2010) (striking a *pro se* prisoner's unsworn, un-notarized affidavit submitted in opposition to a motion for summary judgment).

[13] *See Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n.2 (5th Cir. 2013) (quoting 28 U.S.C. § 1746(2)); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (same).

has violated § 1692e by using any false, deceptive or misleading misrepresentations in connection with the collection of the debt. *See Johnson v. Eaton*, 873 F. Supp. 1019, 1022 (M.D. La. 1995). The language used in Defendant's initial written communication with Plaintiff provides the requisite information in plain language closely tracking the statutory language. Defendant's initial written communication satisfies the notice requirements of § 1692g(a) and disclosure requirement of § 1692e(11).

Having determined that Defendant's initial communication satisfied the statutory requirements, the court now addresses Plaintiff's allegation that he never received Defendant's initial written communication in the first place. (R. Doc. 17-1 at 3). The Spedale affidavit provides that Mr. Spedale personally caused the letter to be sent to Plaintiff on April 8, 2009 and that Plaintiff never responded. (R. Doc. 15-2 at 2-3). Plaintiff does not submit any evidence to controvert Mr. Spedale's sworn statement that he caused the letter to be mailed. At most, Plaintiff alleges that the letter was never mailed.[14] Plaintiff's conclusory allegation that Defendant never mailed the letter is unsupported by any evidence in the record. Plaintiff does not submit that he has any first-hand knowledge about the process used by Mr. Spedale or his firm to mail debt collection letters. Plaintiff has not provided any controverting evidence suggesting that the letter was not mailed by Defendant from any competent source, such as an employee of Mr. Spedale or his firm. The court, therefore, concludes that there is not a dispute of material fact that the initial communication was sent by Defendant on April 8, 2009.

Plaintiff's allegation that he never received the letter (regardless of whether it was mailed to the correct address) is similarly unavailing. Several federal courts have held that § 1692g(a) only requires the debt collector to "send" written notice of the debt, not that such written notice

---

[14] Plaintiff states that "no such letter . . . was ever mail, delivered to [Plaintiff] at no time." (R. Doc. 17-1 at 3).

12

be "received" by the debtor. *See Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197 (9th Cir. 1999); *see also Antoine v. J.P. Morgan Chase Bank*, 757 F. Supp. 2d (D.D.C. 2010) (granting summary judgment to defendant on plaintiff's deficient disclosure FDCPA claim where there was no factual dispute as to whether the defendant mailed the compliant notice, even though plaintiff disputed receiving the notice); *McNally v. Client Services, Inc.*, 2007 WL 4561152, at *4 (W.D. Pa. 2007) ("[R]eceipt of the notice of debt, as a matter of law, is not required."). As discussed above, it is undisputed that Defendant mailed the letter. Furthermore, Plaintiff has not submitted any evidence demonstrating that his receipt of the letter is genuinely disputed. *See* Fed. R. Civ. P. 56(c)(1)(A); *see also Senftle v. Landau*, 390 F. Supp. 2d 463, 474 (D. Md. 2005) (concluding that there was no genuine issue of material fact whether plaintiff received a debt collection letter because he did not affirm under oath that he did not receive the letter).

The record also belies Plaintiff's assertion that he never received the Defendant's initial communication. The letter is addressed to Mr. Johnson at 328 Flicker Street, Baton Rouge, Louisiana. (R. Doc. 15-3 at 1). This is the same address Plaintiff provided on the promissory note for the underlying debt (R. Doc. 17-2 at 21-22) and on the Complaint filed in this action (R. Doc. 1). There is no indication in the record that Plaintiff lived at a different address on April 8, 2009. Furthermore, about two weeks after Defendant obtained a default judgment for Family Financial Services in the underlying debt collection lawsuit, Plaintiff mailed a letter to Family Financial Services acknowledging that he was "in receipt of [its] letter of demand in the above referenced account [#12549-46596]." (R. Doc. 15-5). Plaintiff has not indicated anything in the record to contradict Defendant's assertion that this letter was a response to Defendant's April 8, 2009 debt collection letter made directly to Family Financial Services.

13

Although not submitted in support of his summary judgment motion or in opposition to Defendant's summary judgment motion, the court has reviewed and considered the notarized document submitted by Plaintiff as an attachment to his Complaint (R. Doc. 1 at 7-10). This document—which was notarized on May 29, 2012 and appears to be the "notice" letter sent by Plaintiff to Defendant on May 30, 2012, June 7, 2012, and September 24, 2012—does not assert or generate any genuine issues of material fact. At most, the document requests Defendant to produce various documents (none of which are relevant to the underlying debt)[15] and alleges that Defendant violated various sources of law. In a section titled "Statement of Facts," the sole fact alleged by Plaintiff is that there is no evidence that Defendant is anything other than a "debt collection agency." (R. Doc. 1 at 9). Defendant does not dispute that fact for the purpose of its motion.

The record is clear that Plaintiff did not respond to Defendant's initial communication within the thirty-day period provided by § 1692g. The record is also clear that Plaintiff did not submit any competent summary judgment evidence raising a genuine dispute of material fact regarding whether Defendant sent the notice letter on April 8, 2009 as required by 15 U.S.C. § 1692g or whether Plaintiff received the letter thereafter.[16] Plaintiff had 30 days to respond to the letter after receiving it. The record indicates that Plaintiff communicated directly to Family

---

[15] The letter requests Defendant to produce: "1. a copy of license to practice law from Louisiana Secretary of state 2. copy of your oath of office to uphold the constitution for the United States 3. copy of your declaration of authority order (DOAO) 4. Supreme Court Order for you to practice law outside the jurisdiction of the courts 5. copy of tax forms IW9, W9, 1042 showing whether you are foreign or domestic 6. do you derive your authority from the state of Louisiana? if so send copy of document showing whether Louisiana enter into the union of states on equal footing 7. copy of document showing Louisiana is a state or possessory territory." (R. Doc. 1 at 9). The Court agrees with Defendant "that virtually all of what [Plaintiff] demanded had absolutely no bearing on the existence of the debt, and the balance due." (R. Doc. 15-1 at 13 n. 1).

[16] Accordingly, the court need not reach Defendant's argument that Plaintiff's claim is time-barred under § 1692k(d).

Financial Services on May 27, 2009 (R. Doc. 15-5), but did not seek validation of the debt until May 30, 2012. As Plaintiff did not seek validation within 30 days of receipt of the written initial communication, Defendant had no duty to cease collection activity. 15 U.S.C. § 1692g(b).

For the foregoing reasons, the Court will grant summary judgment to Defendant on Plaintiff's claims under the FDCPA.

### b. Plaintiff's Additional Claims

Defendant addresses the various claims potentially raised by the Plaintiff in attachments to the Complaint.[17] The Court has already addressed Plaintiff's conclusory allegation that Defendant has violated virtually every section of the FDCPA. The Court will now briefly address Plaintiff's allegations that Defendant violated various other sources of federal law.

Plaintiff alleges, without elaboration, that Defendant has violated the Sixth Amendment and Eleventh Amendments of the U.S. Constitution (R. Doc. 1 at 8). Neither of these amendments have any application to the facts of this case. The Sixth Amendment concerns criminal prosecutions and does not afford a private right of action even against defense counsel. *See Carr v. Baynham*, No. 08-cv-12, 2008 WL 1696881 (E.D. Tex. Apr. 9, 2008). The Eleventh Amendment concerns state sovereign immunity and has no application where a state is not party to the litigation.

Plaintiff alleges, without elaboration, that Defendant has violated 27 C.F.R. § 72.11 (R. Doc. 1 at 8). This regulation concerns the disposition of property seized by agents of the Bureau

---

[17] Although Plaintiff has attempted to insert new claims in his own motion for summary judgment, Plaintiff has not requested, nor has the court granted, leave to amend the Complaint. The Court will, therefore, not address any additional claims raised in Plaintiff's motion for summary judgment not raised in the Complaint, as those claims are not included in this action. The non-FDCPA federal claims addressed below are asserted in attachments to Plaintiff's complaint. (R. Doc. 1 at 8-12). Furthermore, although addressed in Defendant's motion for summary judgment, the court does not interpret the attachment to Plaintiff's complaint as alleging any state law claims for barratry or champerty, as Plaintiff only alleges that he "will sue all lawyers" under those theories some time in the future. (R. Doc. 1 at 8).

of Alcohol, Tobacco, and Firearms (ATF). The regulation has no application to the facts of this case.

Plaintiff alleges, without elaboration, that Defendant has violated 16 U.S.C. § 551 (R. Doc. 1 at 8). This statute grants the Secretary of Agriculture authority to promulgate regulations to protect national forests from destruction by fire and depredation. The statute has no application to the facts of this case.

Plaintiff alleges, without elaboration, that Defendant has violated 43 U.S.C. § 1761 (R. Doc. 1 at 8). This statute grants the Secretary of the Interior and the Secretary of Agriculture authority to grant rights-of-way over public lands. The statute has no application to the facts of this case.

Plaintiff alleges, without elaboration, that Defendant has violated various provisions of the federal criminal code, including 18 U.S.C. § 7(1), § 3045, § 2071, § 2073, § 2075, and § 2076 (R. Doc. 1 at 8, 11-12). 18 U.S.C. § 7 defines the special maritime and territorial jurisdiction of the United States for the purpose of federal criminal statutes. 18 U.S.C. § 3045 grants United States magistrate judge's the authority to issue warrants of arrest for violation of internal revenue laws. 18 U.S.C. §§ 2071, 2073, 2075, and 2076 criminalize the mutilation, damaging, falsifying, or failure to report certain documents. None of these statutes have any application to the facts of this case. Furthermore, there is no private cause of action under federal criminal statutes. *Pierre v. Guidry*, 75 F. App'x 300 (5th Cir. 2003).

In short, Plaintiff has not raised any genuine issue of material fact to support his claims that Defendant violated the foregoing sources of federal law and Defendant is entitled to judgment as a matter of law on these claims. The Court will, therefore, grant Defendant summary judgment on these non-FDCPA claims as well.

## V. Conclusion

For the reasons set forth above, **IT IS ORDERED** that Plaintiff's motion for summary judgment (R. Doc. 20) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (R. Doc. 15) is **GRANTED,** and Plaintiff's claims are **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on December 23, 2013.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**